**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seelig (AS3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

AURORA MORRISON, *on behalf of herself*
*and others similarly situated*,

    Plaintiff,         Case No.:

               **CLASS ACTION COMPLAINT**

    v.           **JURY TRIAL DEMANDED**

ANNIE'S HOMEGROWN, INC.,

    Defendant.

_____

Plaintiff AURORA MORRISON (herein "Plaintiff AURORA" OR "Plaintiff") individually and on behalf of all other persons similarly situated, by their undersigned attorneys, pursuant to this Class Action Complaint against the Defendant, ANNIE'S HOMEGROWN, INC. ("Defendant" or "ANNIE'S"), allege the following:

## NATURE OF THE ACTION

    1.  This is a consumer protection action seeking redress for, and a stop to, Defendant's unfair and deceptive practice of advertising and marketing its Annie's products as having no Preservatives.

    2.  Defendant's representations that its Products contain no preservatives are deceptive because ANNIE'S products contain the preservatives citric acid and/or ascorbic acid,

and tocopherol. This labeling deceives consumers into believing that they are receiving healthier, preservative-free beverages, but Defendant's products do not live up to these claims.

3.     Conscious of consumers' increased interest in more nutritious products free of additives and willingness to pay more for products perceived to meet this preference, Defendant misleadingly, illegally, and deceptively seeks to capitalize on these consumer health trends.

4.     Defendant sold and continues to sell products with deceptive or misleading labeling. These are:

1. Annie's Spirals with Butter & Parmesan Macaroni & Cheese (citric acid). **Exhibit A**, pgs. 2-3.
2. Annie's Mac & Trees Yummier Than Ever (citric acid). **Exhibit A**, pgs. 4-5.
3. Annie's Bernie's Farm Yummier Than Ever (citric acid).  **Exhibit A**, pgs. 6-8.
4. Annie's Organic Macaroni & Cheese Classic Cheddar Yummier Than Ever (citric acid). **Exhibit A**, pgs. 9-11.
5. Annie's Bunny Pasta Yummier Than Ever (citric acid). **Exhibit A**, pgs. 15-16.
6. Annie's Raspberry Half Iced Tea Half Lemonade (citric acid and ascorbic acid). **Exhibit A**, pgs. 12-13.
7. Annie's Organic Cheesy Ravioli (citric acid). **Exhibit A**, pgs. 14-15.
8. Annie's Organic All Stars Pasta in Tomato & cheese Sauce (citric acid). **Exhibit A**, pgs. 16-17.
9. Annie's Organic Bernie's Farm Fruit Snacks (citric acid and ascorbic acid). **Exhibit A**, pg. 18.
10. Annie's Organic Bunny Fruit Snacks Berry Patch (citric acid and ascorbic acid). **Exhibit A**, pg. 19.
11. Annie's Organic Frosted Oak Flakes (tocopherols). **Exhibit A**, pgs. 20-21.
12. Annie's Organic Bernie O's Pasta in Tomato & Cheese Sauce (citric acid). **Exhibit A**, pg. 22.
13. Any other Annie's Products representing they have no preservatives despite containing citric acid, ascorbic acid, tocopherols, and/or any other kind of preservative (collectively, the "Products"; individually, a "Product")

5.     Plaintiff brings this proposed consumer class action on behalf of themselves and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not resale.

6.     Defendant markets the Products in a way that is deceptive to consumers under consumer protection laws of New York, California, the other 48 states, and the District of Columbia.

7.     Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising. These statutes are:

1)  Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, *et seq.*;
2)  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;
3)  Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.*;
4)  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;
5)  California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;
6)  Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.*;
7)  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;
8)  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;
9)  District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, *et seq.*;
16) Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.*;
17) Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, *et seq.*;
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et seq.*;
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.*;
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
23) Michigan Consumer Protection Act, § 445.901, *et seq.*;
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;
25) Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;
27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et seq.*;
28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;
29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;
30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

*31)* New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;
*32)* New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;
*33)* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;
*34)* North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;
*35)* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes
     § 75-1, *et seq.*;
*36)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. *et seq.*;
*37)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;
*38)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;
*39)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann.
     § 201-1, *et seq.*;
*40)* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws
     § 6-13.1-1, *et seq.*;
*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;
*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified
     Laws § 37 24 1, *et seq.*;
*43)* Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.*;
*44)* Texas Stat. Ann. § 17.41, *et seq., Texas* Deceptive Trade Practices Act;
*45)* Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, *et seq.*;
*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;
*47)* Virginia Consumer Protection Act, Virginia Code Ann. § 59.1-196, *et seq.*;
*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;
*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et
     seq.*;
*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, *et seq.*;
*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. § 40-12-101, *et seq.*

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because

this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative

Class is a citizen of a different state than Defendant, and the amount in controversy exceeds the

sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

9.     This court has personal jurisdiction over Defendant because the Products are

advertised, marketed, distributed, and sold throughout New York State. Defendant engages in the

wrongdoing alleged in this Complaint throughout the United States, including New York State.

Defendant is authorized to do business in New York State, and Defendant has sufficient contacts

with New York and/or otherwise has intentionally availed itself of the markets in New York State,

4

rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York State.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

### *Plaintiffs*

11.     Plaintiff AURORA is, and at all times relevant hereto has been, a citizen of New York State and a resident of Kings County. On May 4, 2018, Plaintiff AURORA purchased a 5.25 oz. box of Annie's Spirals with Butter & Parmesan Macaroni & Cheese from a Fairway Market in Manhattan for the price of $2.33. *See* **EXHIBIT A** pg. 2,3

12.     Plaintiff AURORA purchased the Product relying on Defendant's representations on the Product packaging. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff AURORA was injured when she paid money for a product that did not deliver the qualities it promised and misled her as to its contents. She paid the above sum on the assumption that she was purchasing a preservative-free beverage. She would not have been willing to pay the sum she paid had she known the Product actually had preservatives and was mislabeled. Defendant's No Preservatives labeling misled Plaintiff AURORA into believing that she was purchasing a preservative-free product. Defendant delivered a Product with significantly less value than was warranted by its representations, thereby depriving her of the benefit of her bargain and injuring her in an amount up to the purchase price. Damages can be calculated through expert testimony at trial.

*Defendant*

13.   Defendant ANNIE'S HOMEGROWN, INC.  is a corporation organized under the laws of Delaware with its principal place of business at Number One General Mills Blvd, Minneapolis, MN 55426. Defendant's registered agent is: The Corporation Trust Company., located at Corporation Trust Center 1209 Orange St, Wilmington, DE 19801.

14.   Defendant develops, markets Products throughout the United States. The Products are available at numerous retail and online outlets, including Target, Walmart and Amazon.com.

15.   The advertising for the Products, relied upon by Plaintiff, is approved by Defendant and its agents, and is disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Products is designed to encourage consumers to purchase the Products based on those false representations, and misleads reasonable consumers, including Plaintiffs and the Class. Defendant owns, manufacture and distributes the Products and authorizes the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

### Defendant's Representations that the Products Contain No Preservatives Is False and Misleading to a Reasonable Consumer

16.   Defendant misleads consumers into believing that the Products contain no preservatives with its false labeling claims to this effect. However, the Products actually contain citric acid and/or ascorbic acid and tocopherols, whose functions as preservatives have been well-documented. These ingredients function as preservatives in the Products.

17.   The FDA defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars,

vinegars, spices, oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22(a)(5).

18.     The citric acid, ascorbic acid, and tocopherols in the Products have precisely this effect.

19.     The MacMillan Dictionary defines "tends" as "to usually do a particular thing," as in "He tends to exaggerate" or "The gym tends to get very busy at around six o'clock."[1] The scientific evidence and FDA statements cited below establish that citric acid, ascorbic acid. And tocopherols both tend to prevent or retard the deterioration of food. This remains the case regardless of the subjective purpose for which this substance is added to the Product.

20.     Citric acid, ascorbic acid, and tocopherols do not fall into any of the regulatory exemptions from the definition of a preservative.

21.     The FDA expressly classifies citric acid, ascorbic acid, and tocopherols as preservatives in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website:

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | **Ascorbic acid**, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, **tocopherols** (Vitamin E) |

---

[1] http://www.macmillandictionary.com/us/dictionary/american/tend

http://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm.

22.     Ascorbic acid is also listed on the FDA's regulatory listing of chemical preservatives. *See* 21 CFR § 182.3013 (Subpart D).

23.     The online magazine livestrong.com explains how ascorbic acid functions as a preservative:

> Preservatives are divided into three categories: Antimicrobials, antioxidants and ascorbic acid. Antimicrobials prevent bacterial, mold and yeast development. Antioxidants preserve fats, keeping them from going rancid. Ascorbic acid, more commonly known as vitamin C, falls in the third group as a preservative that stops foods from continuing to ripen, an aging process that leads to decay.
>
> **About Ascorbic Acid**
>
> Ascorbic acid is a water-soluble vitamin with antioxidant properties. Inside your body, the nutrient preserves cell integrity by neutralizing free radicals, which are toxic molecules that can damage healthy cells and cause disease.
>
> **Preserving Properties**
>
> Ascorbic acid neutralizes oxygen when it comes into contact with it. Oxygen allows foods to continue to ripen, an aging process similar to the one people go through that ends in death. Oxygen is also vital for many microorganisms to thrive, some of which cause decay. Ascorbic acid slows or neutralizes these events. The substance blocks cured meat's propensity to form carcinogens called nitrosamines, for example. In the process, the vitamin also preserves the flesh's red color. In addition, ascorbic acid preserves flavor.
>
> **Food-Preservation Mechanism**
>
> Canned vegetables, bottled juices, jams and other preserved fruit are processed foods manufacturers protect with ascorbic acid. The vitamin's acidity makes it hard for the enzyme phenolase to act. Phenolase accelerates oxidation, a chemical process in which oxygen level rises, resulting in decay. This is also the process that ascorbic acid combats.[2]

---

[2]http://www.livestrong.com/article/496950-is-ascorbic-acid-a-preservative/

24.    Citric acid's nature as a preservative is also acknowledged by insiders in the preservative manufacturing and distribution industries. FBC Industries, Inc. a producer and supplier of FCC grade Citric Acid additives, acidulants, buffering agents and preservatives for the food and beverage industry describes citric acid's function: "Citric acid is the most commonly used acidulant in the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[3]

25.    The FDA's Warning Letter to the manufacturer of the Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites" dated October 6, 2010 further confirms that citric acid and ascorbic acid are preservatives:

> "The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."

*See* **EXHIBIT B**, FDA Warning Letter dated October 6, 2010 (emphasis added).

26.    As described above in ¶¶ 21, 23, a preservative as defined by the FDA is a substance that "tends" to prevent or retard the deterioration of foods. Thus, it is not necessary that it function as a preservative in every single instance for it to qualify as a preservative according to the FDA's definition, so long as this is its general tendency.

27.    Tocopherols are also listed on the FDA's regulatory listing of chemical preservatives. *See* 21 CFR § 182.3890 (Subpart D).

28.    The FDA's Warning Letter to Wonder Natural Food Corp. dated July 13, 2015 further confirms that tocopherols are preservatives:

> We note that the label bears the claim "No Preservatives." We note that if any ingredients such as tocopherol or sodium ascorbate are being used as preservatives,

---

[3]  http://www.fbcindustries.com/Citric_Acid.aspx

this statement would be false and cause the product to be misbranded under 403(a)(l).

*See* **EXHIBIT C,** Warning Letter dated July 13, 2015

29.     Citric acid, ascorbic acid, and tocopherols do as a matter of fact function as preservatives in the Products.

**Plaintiff's Claims Are Consistent with Federal Law**

30.     Defendant's deceptive misrepresentations violate the FDCA, which provides that "[a] food shall be deemed misbranded. If its labeling is false or misleading in any particular." 21 U.S.C. § 343 (a)(1).

31.     Plaintiff's claims are not preempted by the FDCA because the definition of "preservative" as used herein is consistent with that of the FDA (see above). Moreover, FDA regulations specifically note that claims like "contains no preservatives" are non-nutritive claims that that are not governed by 21 C.F.R. § 101.13. *See* 21 C.F.R. § 101.65(b)(2). Since the FDA has not issued specific standards governing when "no preservative" claims are either true or false, such representations fall outside the ambit of FDA regulations. Accordingly, Plaintiff's claim cannot possibly be preempted. *See Bimont v. Unilever U.S., Inc.*, No. 14-CV-7749 (JPO), 2015 U.S. Dist. LEXIS 119908, at *6 (S.D.N.Y. Sep. 9, 2015) ("preemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements.").

**Plaintiff And Class Members Were Injured As A Result Of Defendant's Misrepresentation**

32.     Plaintiff and Class members were injured when Defendant denied them the full benefit of their bargain. They paid money for Products that they were led to believe were preservative-free, but consumers then received preservative-laden Products, which have significantly less value. Plaintiff and Class members were thus deprived of the benefit of their bargains. Plaintiff and Class members would not have purchased the Products, or would only have

been willing to pay less for them, had they known the truth about them. Plaintiff and Class members were injured in an amount up to the purchase price, the difference between the actual value of the Products and the value of the Products as misrepresented to them by Defendant, to be determined by expert testimony at trial.

33.     By representing that the Products have no preservatives Defendant seeks to capitalize on consumers' preference for healthier foods and drinks with fewer additives, and the association between these products and a wholesome way of life.

34.     American consumers are increasingly seeking out and purchasing foods that they perceive are principally made of ingredients that are healthful and nutritious.[4]

35.     Consumers are willing to pay more for unprocessed and less-processed products with no additives because of this association, as well as because of the perceived higher quality, health, and safety benefits associated with preservative-free foods.

36.     The marketing research firm Mintel reports that more and more Americans are concerned with avoiding foods containing preservatives:

> Foods bearing "free-from" claims are increasingly relevant to Americans, as they perceive the products as closely tied to health. New research from Mintel reveals that 84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).

> Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent).[5]

---

[4] Nancy Gagliardi, Consumers Want Healthy Foods—And Will Pay More for Them, FORBES (Feb. 18, 2015, 11:30 AM), http://goo.gl/A7Z5WN (last visited 01/02/2018) (88% of respondents willing to pay more for healthier foods); see INT'L FOOD INFO. COUNCIL FOUND., WHAT'S YOUR HEALTH WORTH?: FOOD & HEALTH SURVEY 2015, at 42 (2015), http://goo.gl/4g5wNb.
[5] http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed

37.     Alternet.org reports on research showing that most Americans are prepared to pay a premium price for healthier options:

> Not only are consumers increasingly seeking out wholesome foods, they are willing to pay a premium for them. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods. Global sales of healthy food products are estimated to reach $1 trillion by 2017, according to Euromonitor.

> When it comes to what consumers will be seeking out more of over the coming year, it may amount to single word. "Just think of the word no," Seifer said. "No preservatives, no additives, no growth hormones."[6]

38.     Courts regularly uphold actions based on payment of a price premium due to a seller's misrepresentations. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) ("the issue of 'price premium' was relevant because it showed that Plaintiffs paid more than she would have for the good but for the deceptive practices of the defendant-sellers"); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("[I]n his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.' . . . . Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (Plaintiffs claim that, but for Defendant's "unfair and deceptive practices," they—and the putative class—would not have purchased, or paid a price premium for, Smart Balance. Compl. ¶¶ 7, 81. Indeed, Plaintiff claims that she paid price premiums specifically 'based on Defendant's misrepresentations,' and alleges that she deserves damages in the amount of either the purchase

---

[6] http://www.alternet.org/food/8-food-trends-watch-2016

prices, or the price premiums that they paid for Smart Balance. Id. ¶ 81. Accordingly, the Court

finds that Plaintiffs have adequately alleged injury under GBL § 349.").

**Defendant's Misrepresentations Were Material To, And Would Be Reasonably Relied Upon By, Reasonable Consumers**

39.     Plaintiff and Class members reasonably relied on Defendant's false and/or

misleading representations that the Products were free of preservatives.

40.     At the point of sale, Plaintiff and Class members did not know, and had no reason

to know, that the Products were misbranded and misleading as set forth herein, and would not have

bought the Products had they known the truth about them.

41.     A representation that a product has no preservatives is material to a reasonable

consumer when deciding to purchase it. Plaintiff did, and a reasonable consumer would, attach

importance to whether Defendant's Products were free of preservatives because it is common

knowledge that consumers prefer to avoid foods with potentially unhealthy additives (see

consumer behavior research above). Defendant would not have included these representations on

the Product labels if this was not going to influence consumer behavior.

**Defendant Has An Intent To Mislead**

42.     Defendant knew that its claims are misleading.

43.     Upon information and belief, Defendant retains food scientists who can apprise it

of the preservative properties of citric acid, ascorbic acid, and tocopherol.

44.     Given the premium that consumers attach to preservative-free foods, discussed

above, Defendant has a natural interest in misleading consumers as detailed above, as its

deceptions and misleading omissions provide a clear marketing advantage over competitors that

do not engage in such deceptive conduct.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who made retail
> purchases of Products during the applicable limitations period,
> and/or such subclasses as the Court may deem appropriate ("the
> Nationwide Class").

In the alternative, Plaintiff seeks to represent a Class consisting of:

> All persons or entities who made retail purchases of the Products in
> New York during the applicable limitations period, and/or such
> subclasses as the Court may deem appropriate ("the New York
> Class").

46.     The proposed Classes exclude current and former officers and directors of

Defendant, members of the immediate families of the officers and directors of Defendant,

Defendant's legal representatives, heirs, successors, assigns, any entity in which it has or has had

a controlling interest, and the judicial officer to whom this lawsuit is assigned.

47.     Plaintiff reserves the right to revise Class definitions based on facts learned in the

course of litigating this matter.

48.     This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of

the Federal Rules of Civil Procedure. While the exact number and identities of other Class

members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are

millions of Class members. Thus, the Class members are so numerous that individual joinder of

all Class members is impracticable.

49.     Common questions of law and fact arise from Defendant's conduct described herein.

Such questions are common to all Class members and predominate over any questions affecting

individual Class members. These include:

a.   whether claiming Products containing citric acid, tocopherols, and/or ascorbic acid have no preservatives is false and misleading;

b.   whether Defendant deprived Plaintiff and Class members of the benefit of their bargains because the Products purchased had less value than what Defendant warranted;

c.   whether Defendant must disgorge any and all profits it has made as a result of its misconduct; and

d.   whether Defendant should be barred from marketing the Products as having no preservatives.

50.   Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and Class members purchased Defendant's Products and sustained similar injuries arising out of Defendant's conduct in violation of Federal law, New York law, California law, and the laws of the other 48 states and the District of Columbia. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Classes were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of Class members and are based on the same legal theories.

51.   Plaintiff will fairly and adequately represent and pursue the interests of the Classes and has retained competent counsel experienced in prosecuting class actions. Plaintiff understands the nature of her claims herein, has no disqualifying conditions, and will vigorously represent the

15

interests of the Class members. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.

52.     Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and those of the Class members. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for them.

53.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

54.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refuses to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

55.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

56.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Classes, although certain Class members are not parties to such actions.

57.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

*(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)*

58.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

59.     Plaintiff brings these claims on behalf of herself and the other members of the Nationwide Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

60.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

61.    NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

62.    Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiffs is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

63.    Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

64.    The practices employed by Defendant, whereby it advertises, promotes, and markets its Products as free of preservatives is unfair, deceptive, misleading, and in violation of the NY GBL § 349.

65.    The foregoing deceptive acts and practices were directed at consumers.

66.    Defendant should be enjoined from representing the Products contain no preservatives on the labels pursuant to NY GBL § 349.

67.    Plaintiff, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

*(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)*

68.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

69.     Plaintiff brings these claims and on behalf of herself and other members of the Nationwide Class for Defendant's violations of NY GBL § 349.

70.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the other members of the New York Class for Defendant's violations of NY GBL § 349.

71.     Defendant's business act and practices and/or omissions as alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive, and unfair acts or practices in the conduct of any business, trade, or commerce.

72.     Defendant's Practices described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, the following reasons:

        a.     Defendant misrepresents or misleadingly advertises that the Products have no preservatives with an intent to cause Plaintiff and Class members to believe that they are a healthy alternative in comparison to competitors;

        b.     Defendant caused Plaintiff and Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through their conduct;

c.      Defendant made material representations and statements of fact to Plaintiff and Class members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were.

73.      The practices employed by Defendant, whereby Defendant advertises, promotes, and markets its Products as having no preservatives are unfair, deceptive, and misleading and are in violation of NY GBL § 349.

74.      Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

75.      Defendant's actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing the Products as a result of and Defendant's generalized course of deception.

76.      The foregoing deceptive acts and practices are directed at consumers.

77.      The foregoing deceptive acts and practices proximately caused Plaintiff and Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

## COUNT III

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (FALSE ADVERTISING LAW)

*(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)*

78.     Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

79.     Plaintiff bring this claim individually, as well as on behalf of members of the Nationwide Class, for violations of NY GBL § 350.

80.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the members of the New York Class for violations of NY GBL § 350.

81.     Defendant has been and/or is engaged in the "conduct of . . . business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

82.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law § 350-a(1).

83.     Defendant caused to be disseminated throughout New York and the United States, through advertising, marketing and other publications, statements that were untrue and/or misleading.

84.     Defendant's affirmative misrepresentations or deceptions that the Products contain no preservatives are material and substantially uniform in content, presentation, and impact upon

consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendant's material deceptions.

85.   Defendant has violated N.Y. Gen. Bus. Law § 350 because its representations that its Products contain no preservatives were material to and likely to deceive a reasonable consumer.

86.   Plaintiff and Class members have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising.

87.   Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff and Class members seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV.

## FRAUDULENT MISREPRESENTATION/CONCEALMENT

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar fraudulent misrepresentation/concealment law of other states and the District of Columbia to the extent New York fraudulent misrepresentation/concealment law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

88.   Plaintiff realleges and incorporates herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

89.   A claim for fraudulent misrepresentation requires a plaintiff to allege "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." *Mandarin Trading Ltd. v. Wildenstein*, 2011 NY Slip Op 741, ¶ 3, 16 N.Y.3d 173, 178, 919 N.Y.S.2d 465, 469, 944 N.E.2d 1104, 1108 (quoting *Lama Holding Co. v Smith Barney Inc*., 88 NY2d 413, 421, 668 NE2d 1370, 646 NYS2d 76 [1996]).

90.     Element #1 is satisfied because Defendant knowingly misrepresented to Plaintiff and the public by either act or omission that the Products contain preservatives.

91.     Element #2 is satisfied because these and other similar representations were made for the purpose of inducing the reliance of Plaintiff and the Class, or else it would not have been placed on the front label.

92.     Element #3 is satisfied because Plaintiff's reliance on these deceptive representations and/or omissions was justified. He had no way of discovering that they were not true.

93.     Element #4 is satisfied because Plaintiff suffered financial injury as result of Defendant's misrepresentation. The Product Plaintiff paid for did not deliver on the qualities it promised and was not what the he agreed to pay for.

94.     Defendant's conduct as described herein, including but not limited to its failure to provide adequate labeling, and continued manufacture, sale, and marketing of the Products, evidences intentional disregard for the rights of Plaintiff and warrant the imposition of punitive damages.

## COUNT V.

## UNJUST ENRICHMENT

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar fraudulent misrepresentation/concealment law of other states and the District of Columbia to the extent New York fraudulent misrepresentation/concealment law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

95.     Plaintiff realleges and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

96.     As a result of Defendant's deceptive, fraudulent and misleading labeling, packaging, advertising, marketing and sales of the Products, Defendant was enriched, at the expense of

Plaintiff and members of the Class, through the payment of the purchase price for Defendant's Products.

97.     Plaintiff and members of the Class conferred a benefit on Defendant through purchasing the Products, and Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefits conferred on it.

98.     Defendant will be unjustly enriched if allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendant and for which Defendant has been unjustly enriched.

99.     The focus of an unjust enrichment claim is whether the Defendant was unjustly enriched. At the core of New York law are three fundamental elements – the Defendant received a benefit from the plaintiff, and it would be inequitable for the Defendant to retain that benefit without compensating the plaintiff. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendants benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution. The benefit to the defendant is not limited to monies and can be either a direct or an indirect benefit." *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 222 (E.D.N.Y. 2009) (internal quotations and citations omitted).

100.    Under the circumstances, it would violate equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and others similarly situated, given that the quality of the Products purchased by Plaintiff and the Class were not what Defendant represented it as being through the Products' packaging. It would be unjust and inequitable for Defendant to retain the benefit of selling its Product in packaging claiming they contain no preservatives without restitution to Plaintiff and others similarly situated because

Plaintiff and the Class did not receive the full benefit of their bargain. In order for Plaintiff and Class members to be made whole, they must receive a full refund.

101.   In New York, unjust enrichment serves as a mechanism to reimburse defrauded consumers even when a product was purchased indirectly through a third party and there is no direct connection between the parties. *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010), (denying motion to dismiss unjust enrichment claim where plaintiff was not in privity with defendant); *see also Famular v. Whirlpool Corp.*, No. 16 CV 944 (VB), 2017 U.S. Dist. LEXIS 8265 (S.D.N.Y. Jan. 19, 2017) ("New York law does not require plaintiff to have conferred a direct benefit on defendants to state a claim for unjust enrichment. Rather, the law requires only that the plaintiff's relationship with a defendant not be too attenuated.") (internal quotations and citations omitted).

## COUNT VI

## COMMON LAW FRAUD

*(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)*

102.   Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

103.   Defendant intentionally makes materially false and misleading representations regarding the nature of the Products.

104.   Plaintiff and Class members reasonably relied on Defendant's false and misleading representations. They did not know, and had no reason to know, that the Products contain preservatives. They would not have purchased the Products had they known Defendant's claims were false.

105.    Defendant knew and intended that Plaintiffs and the Class members would rely on its misrepresentations.

106.    Plaintiffs and Class members have been injured as a result of Defendant's fraudulent conduct.

107.    Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated, seek judgment against Defendant, as follows:

a.  An Order that this action be maintained as a class action, appointing Plaintiff as representatives of the Nationwide Class;

b.  In the Alternative, an Order appointing Plaintiff AURORA as representatives of the New York;

c.  An Order appointing the undersigned attorney as Class Counsel in this action;

d.  Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

e.  All recoverable compensatory and other damages sustained by Plaintiff and Class members;

f.  Actual and/or statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

g.  An order (i) requiring Defendant to immediately cease their wrongful conduct as set forth in this Complaint; (ii) ordering Defendant to engage in a corrective advertising campaign; and (iii) requiring Defendant to reimburse Plaintiff and all Class members, up to the amounts paid for the Products;

h.  Statutory pre-judgment and post-judgment interest on any amounts;

i.  Payment of reasonable attorneys' fees and costs; and

j.  Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: March 21, 2019

Respectfully submitted,

By:  */s/ C.K. Lee*
     C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seelig (AS3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*